UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION


| | |
|---|---|
| SUSIE G. TALEVSKI, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) Case No. 2: 05 cv 184 |
| | ) |
| BERNARD CARTER, Prosecuting | ) |
| Attorney of the 31st Judicial | ) |
| Circuit, Lake County, in his | ) |
| individual capacity; BARB | ) |
| McCONNELL, Chief Deputy | ) |
| Prosecutor, lake County | ) |
| Prosecutor's Office in her | ) |
| individual capacity; GINA GREEN | ) |
| Deputy Prosecutor, Lake County | ) |
| Prosecutor's Office in her | ) |
| individual capacity; MARILYN | ) |
| KORTENHOVEN, Deputy Prosecutor, | ) |
| Lake County Prosecutor's Office | ) |
| in her individual capacity; | ) |
| COUNTY OF LAKE, | ) |
| | ) |
| Defendants | ) |


OPINION AND ORDER

This matter is before the court on Defendant Carter's and
Defendant Kortenhoven's Motion to Compel Discovery and for
Sanctions and Other Relief filed by the defendants, Bernard
Carter and Marilyn Kortenhoven, on March 26, 2007, and the Motion
for State Defendant's Counsel to Again be Ordered to Return the
Digital Recorder and for Sanctions filed by the plaintiff, Susie
G. Talevski, on May 14, 2007. The defendants' motion to compel is
**GRANTED IN PART** and **DENIED IN PART**, and the plaintiff's motion is
**DENIED AS MOOT**.

<u>Background</u>

The plaintiff, Susie G. Talevski, was employed as a deputy prosecutor in Lake County, Indiana, from December 5, 2002 until her termination on May 12, 2003. In her complaint, Talevski alleged that she was terminated in retaliation for public comments she made concerning her beliefs regarding the office's employment practices and the impact of the building's poor environmental quality on the health of division employees.

During the course of her employment, Talevski became concerned about her duty to report what she alleged were "ghost" employment practices within the child support division of the prosecutors office. Specifically, Talevski alleged that Art Torres, paid as full-time investigator for the division, actually performed no work for the office, with the exception of occasional paper shredding. Talevski alleged that various staff members, including Torres' direct supervisor, acknowledged that Torres had no responsibilities in the office. Talevski further alleged that Torres was present in the office only after 3:30 in the afternoon, and despite his title as an investigator, Torres himself admitted that he was assigned no cases. Talevski raised these concerns within the prosecutors office, and on March 25, 2003, reported these concerns to the Office of the United States Attorney for the Northern District of Indiana.

On April 1, 2003, Talevski met with defendants Lake County Prosecutor Bernard Carter and deputy prosecutor Marilyn Kortenhoven. Carter expressed concern over Talevski's comments and ex-

2

plained that Torres' absence from the office was due to his need to conduct his work "in the field." Following this meeting, Talevski met with an agent of the Federal Bureau of Investigation and again expressed her concern regarding Torres' employment.

Talevski also raised concerns regarding the environmental quality of the Hammond, Indiana building that housed the child support division. She complained that numerous employees at the building suffered from upper respiratory infections, sinus conditions, yeast infections, and frequent headaches, and she raised these concerns at a staff meeting lead by child support division executive director, Gina Green. On May 12, 2003, Green told Talevski that she was prohibited from discussing the building's environmental condition.

On that same day, Talevski was informed that she was to be reassigned to the court room of Lake County Judge Jesse M. Villapando, the son-in-law of the subject of Talevski's ghost employment concerns, Art Torres. Talevski approached Kortenhoven to schedule a meeting to discuss the reassignment with Carter. Talevski alleged that in the course of this conversation, Kortenhoven became angry, grabbed Talevski, causing injury to her arm, and yelled that Talevski was fired.

Talevski filed an initial complaint on March 12, 2005, and an amended complaint on June 20, 2005. Following the district court's ruling on February 1, 2006 granting in part and denying in part motions to dismiss filed by the defendants, Talevski and the state defendants agreed to begin discovery, despite the fact

that the parties had not yet conferred pursuant to Federal Rule
of Civil Procedure 26(f).  Among others, the initial discovery
requests served on Talevski included interrogatories from defen-
dants Carter and Kortenhoven and requests for production by
Carter. In an e-mail dated June 14, 2006, Talevski's counsel
acknowledged to the defendants that he intended to produce a
transcript of an audio recording made by Talevski, without the
knowledge of the other parties, of her last meeting at the
prosecutor's office. Talevski's counsel expressed difficulty in
having the contents of the digital recorder duplicated, and it
was not until August 2006, without having copied or transcribed
the contents of the device, that he responded to the discovery
request by producing the recorder itself.

There is considerable dispute over the parties' communica-
tion regarding this device. It remained in the state defendants'
possession until March 13, 2007, when this court ordered its
return to Talevski. Two days later, the state defendants sought
reconsideration of this order, suggesting that the device con-
tained evidence that Talevski had violated federal wiretapping
laws in making the recording. That same day, the defendants filed
an amended motion for reconsideration, now accompanied by a
subpoena *duces tecum* for the device issued to the state attorney
general by the federal grand jury for "any and all recordings or
digital recording devices obtained in the course of discovery
proceedings in *Talevski v. Carter, et. al.* Cause # 2:05 CV 184."

4

On May 14, 2007, Talevski indicated in her motion seeking the return of this device that representations were made to her by federal authorities that no investigation regarding the recordings was ongoing and that the device was being returned. In her motion, Talevski also sought sanctions against the state's counsel for what she termed false accusations of criminal conduct. On May 22, 2007, the state filed notice that the device had been returned to them and, in turn, would be returned to Talevski.

Consequently, Talevski's motion for return of this device is moot, and the only issues remaining are the plaintiff's motions for sanctions and the state defendants' motion to compel.

<u>Discussion</u>

A party is entitled to conduct discovery on any matter that is "relevant to the claim or defenses of any party." Federal Rule of Civil Procedure 26(b)(1). Under the federal rules, relevancy in discovery includes information that may not be admissible, provided that "discovery appears reasonably calculated to lead to discovery of admissible evidence."  Rule 26(b)(1); **Chavez v. Daimler Chrysler Corp.**, 206 F.R.D. 615, 619 (S.D. Ind. 2002). Following amendments to Rule 26, narrowing relevance from that which is related to the "subject matter" of the case to matters related particularly to "claims or defenses," relevance remains broadly construed. **Sanyo Laser Products, Inc. v. Arista Records, Inc.**, 214 F.R.D. 496, 500 (S.D. Ind. 2003) ("The change, while

5

meaningful, is not dramatic, and broad discovery remains the norm.").

A party may seek an order compelling disclosure when an opposing party has failed to respond or has provided evasive or incomplete responses.  Federal Rule of Civil Procedure 37(a)(2)-(3). The court has broad discretion when reviewing a discovery dispute and "should independently determine the proper course of discovery based upon the arguments of the parties." *Gile v. United Airlines Inc.*, 95 F.3d 492, 496 (7th Cir. 1996); *Patterson v. Avery Dennison Corporation*, 281 F.3d 676, 681 (7th Cir. 2002) ("[T]he court should consider the totality of the circumstances, weighing the value of material sought against the burden of providing it, and taking into account society's inter-est in furthering the truthseeking function in the particular case before the court.") (internal citations omitted).

Provided the information sought meets the standard of relevancy described in the federal rules, the "burden rests upon the objecting party to show why a particular discovery request is improper." *Kodish v. Oakbrook Terrace Fire Protection District*, 235 F.R.D. 447, 449-50 (N.D. Ill. 2006). The objecting party must show with specificity that the request is improper. *Graham v. Casey's General Stores*, 206 F.R.D. 253, 254 (S.D. Ind. 2002). Discovery, however, is not limitless, "and these limits become more formidable as the showing of need decreases." *Rubin v. Islamic Republic of Iran*, 349 F.Supp.2d. 1108, 1111 (N.D. Ill.

2004) (*quoting* ***Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130***, 657 F.2d 890, 904 (7th Cir. 1981).

The defendants specify a series of deficiencies which they seek to correct through this motion to compel. However, the defendants also assert generally that all of Talevski's objections to their discovery requests have been waived because she failed to raise them in a timely manner.  Although Federal Rules of Civil Procedure 33(b)(4) and 34(a) contain different language describing the means for objecting to interrogatories and requests for production, courts uniformly conclude that an objection may be waived if it is not timely raised and good cause for the delay is not shown. ***Autotech Technologies Limited Partnership v. Automationdirect.com, Inc.***, 236 F.R.D. 396, 298 n.2 (N.D. Ill. 2006). *See also* ***Ayers v. Continental Casualty Company***, 240 F.R.D. 216, 222 (N.D. W. Va. 2007)("Both the language of Rule 33 and its promulgation history suggest that grounds for objection must be stated in a response filed within the period allowed for response, and that objections sought to be interposed later are waived unless the waiver is excused for good cause") (internal citations and quotations omitted).

An examination of the parties' initial pretrial steps illustrates why the sanction of waiver is not appropriate in this instance. On March 2, 2006, the state defendants' counsel, via e-mail, asked whether the parties in the case were agreeable to beginning discovery, though they had not yet conferred on a

discovery plan. Talevski's counsel agreed, and that same day, was served with Carter's interrogatories and requests for production.

The parties' Rule 26 conference was held on April 14, 2006, and on April 21, 2006, this court held a preliminary pretrial conference. At this conference, Talevski's attorney requested that Carter also serve the discovery requests electronically, which occurred on April 24, 2006. On May 1, 2006, the state defendant's attorney wrote Tavelski's attorney, stating that responses were due on April 4, confirming that the electronic form of the requests were sent on April 24, and calling for a prompt response to the requests. Plaintiff's responses and objections were served on May 22, 2006.

The defendants correctly noted that Talevski, absent any other agreement between the parties, was required to respond within 30 days of the March 2 service of these discovery requests. However, based upon the parties' initial agreement to begin discovery and the fact that the responses were made within approximately two months, the harsh sanction to waiver is not appropriate. ***Anderson v. Hale***, 202 F.R.D. 548, 553 (N.D. Ill. 2001)("Acknowledging the harshness of a waiver sanction, courts have reserved the sanction for those cases where the offending party committed unjustified delay in responding to discovery. Minor procedural violations, good faith attempts at compliance, and other such mitigating circumstances militate against finding waiver."). In addition, though Rule 26(d) provides generally that parties may agree to commence discovery prior to conferring on a

8

discovery plan, Rule 33 states that interrogatories may not be served prior to this meeting without "leave of court or written stipulation."

There is no indication that the state's discovery requests were met with dilatory tactics or less than a good faith effort at compliance. In addition, circumstances in which courts have found waiver appropriate are markedly different than the circumstances presented here. Waiver is invoked more commonly when, after having provided responses or a general objection, a party later seeks to assert specific objections or privileges to a request. Talevski has not sought to raise new objections after having failed to raise them with her initial response. *See e.g. Ayers*, 240 F.R.D. at 222; *Safeco Insurance Company of America v. Rawstrom*, 183 F.R.D. 668, 671 (C.D. Cal. 1998).

The next general issue raised is Talevski's objection that the defendants exceeded the permitted number of interrogatories. Talevski ceased answering at interrogatory 15, refusing to answer interrogatories 16 through 25, on the contention that the first 15 interrogatories, with subparts, contained more than 30 questions. The defendants counter with the argument that, by answering some interrogatories and refusing others, Talevski waived any objection to the number of interrogatories. This argument is without support in this circuit. The single case the defendants rely upon states this proposition without reference to any case or language within the federal rules and, in fact, goes on to find that the number of interrogatories did not exceed that which

was permitted. *See Allahverdi v. Regents of University of New Mexico*, 228 F.R.D. 696, 698 (D.N.M. 2005)("[T]he Court concludes that Allahverdi made a good faith attempt to comply with the permissible number of interrogatories under rule 33 of the Federal Rules of Civil Procedure."). Further, within the Seventh Circuit, there is no support for a rule that prescribes a single acceptable manner of objecting to an excessive number of inter-rogatories. *See e.g. Bell v. Woodward Governor Company*, 2005 WL 3829134 at *1 (N.D. Ill. June 30, 2005). Accordingly, Talevski has not waived this objection.

Rule 33(a) states that "any party may serve upon any other party written interrogatories, not exceeding 25 in number includ-ing all discrete subparts."  Though the rules do not define the means for identifying "discrete subparts," courts commonly determine that "interrogatory subparts are to be counted as one interrogatory if they are logically or factually subsumed within and necessarily related to the primary question." *Bell*, 2005 WL 3829134 at *1 (*quoting Kendall v. GES Exposition Services, Inc*., 174 F.R.D. 684, 685 (D. Nev. 1997). *See also Trevino v. ACB American, Inc*., 232 F.R.D. 612, 614 (N.D. Cal. 2006); 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2168.1, at 261 (2d ed. 1994).

The number of interrogatories served by Carter exceeds the limit of 30 agreed to by the parties, but not as drastically as claimed by the plaintiff, who insists that the interrogatories number over 90. Key examples of interrogatory subparts that

10

represent separate questions include defendant Carter's first
interrogatory, which asks for Talevski's name, birth date, and
address, but then it goes on in subparts to ask Talevski to list
degrees that she has earned and her marital status. Subsequent
interrogatories that ask for the name, address, and dates of
Talevski's past employment become more than one interrogatory
when the subparts ask for the details regarding any disciplinary
incident that occurred while employed. This question also pro-
vides an example of the redundant nature of the interrogatories
served by Carter. For instance, having asked Talevski such
details regarding her employment "for the past 10 years," in a
new interrogatory, Carter asks for the identical information
"since her employment with the Lake County prosecutor's office"
in 2003.  Finally, interrogatory 15 asks Talevski to "set forth
the content of each conversation" with four named co-workers and
"all other co-workers," regarding Art Torres. Not only is this
the equivalent of five interrogatories, but in asking Talevski to
recreate numerous dialogues, it is a form of question particu-
larly ill-suited to the interrogatory form.

     The court finds that, at most, Carter's interrogatories
number 37. This is not the egregious abuse that Talevski has made
it out to be. Further, in light of the fact that other objections
raised by Talevski are valid, the court finds that the number of
interrogatories posed by the defendant is reasonable, and Talev-
ski may not avoid answering them solely on the grounds that
Carter exceeded the limits. Specifically, those interrogatories

to which this objection is not valid are 16, 17, 19, 20, 22, 23, 24 and 25. Accordingly, Talevski is required to respond to these.

Because interrogatories 18 and 21 ask for nothing that was not covered by interrogatory 6, no response to 18 and 21 is required. In interrogatory 6, Talevski was asked to describe the factual support, including individuals involved, for every event that "constituted a violation of your civil rights and retaliation." Similarly, interrogatory 18 asked for the factual basis for the claim that she was retaliated for speaking out about Torres and the environmental quality of the building, and interrogatory 21 asked for the factual support that defendant Gina Green "ordered you to cease publicly speaking out about your concern regarding alleged environmental toxins."

The defendants next object to Talevski's refusal to provide employment information dating back more than five years when the defendants sought 10 years worth of this information.  Based upon the broad scope of discovery and Talevski's burden to object with greater specificity than the oft-invoked statement that the discovery sought is unduly burdensome, the court concludes that Talevski's employment history within a 10-year time frame is within the scope of discovery. *See* ***Davenport v. Indiana Masonic Home Foundation, Inc.***, 2003 WL 1888986 at *3 (S.D. Ind. March 27, 2003). *See also* ***Grace v. City of Xenia, Ohio***, 2006 WL 3196421 at *2 (S.D. Ohio November 2, 2006).

The defendants claim that Talevski's response to requests for medical records is improper. With interrogatory 3, Carter

12

asked Talevski to provide records regarding mental health coun-
seling, if Talevski has sought counseling in the past 10 years.
The defendants are correct in noting that, in a claim seeking
damages based on distress, mental health is relevant. The defen-
dants do not explain their continued insistence regarding this
question in the face of Talevski's answer that no mental health
treatment was sought during this period. Accordingly, it must be
assumed that there are no records. In response to requests for
mental health records, no further response is required.

In their requests for production and multiple interroga-
tories, the defendants also sought medical records for treatment
that Talevski received for injuries she alleged she suffered as a
result of the defendants' actions. (Interrogatories 4, 7, 10, 22,
and Request for Production 3, 11) In response, Talevski provided
a signed release for Dr. Nathaniel Ross but refused to provide a
release for Dr. Mary Vanko, Talevski's gynecologist, stating that
Dr. Ross was the only doctor who she saw with respect to the harm
she alleged in her complaint. The defendants have latched on to
Talevski's reference to yeast infections in her complaint and
apparently assumed that this condition lead to the visit to Dr.
Vanko's office. The assumption is belied by Talevski's response,
indicating that her visit to Dr. Vanko was a routine office visit
and unrelated to the injuries claimed in her complaint. Accord-
ingly, these records are not responsive to Carter's interroga-
tories.

13

The defendants' motion further seeks an order compelling reponses to defendant Kortenhoven's interrogatories, to which Talevski has provided no response. Rather, Talevski indicated that these interrogatories were based upon her final meeting with the defendants and could not be answered without access to the digital recorder in the state's possession. The parties dispute this statement. However, the court notes that the recording device has been returned and, accordingly, the objection now is moot.

The defendants also present a handful of loose ends that they have wrapped into their motion that can be addressed with little need for elaboration. For instance, the defendants note that Talevski has taken a new job. They correctly note that she, under her duty to update discovery responses, must provide this information to the defendants. The defendants further complain that Talevski, in response to interrogatory 10 (seeking information on personal injuries) merely cross referenced her answer to interrogatory 7 (asking for each and every item of damage, including medical expenses). Similarly, Talevski responded to interrogatory 12 (regarding her employment since leaving the prosecutor's office) by reference to interrogatory 2 (seeking employment information for the past 10 years.) The court already has addressed the redundant nature of many of Carter's interrogatories and will not compel a plaintiff to answer the same question twice.

14

The defendants next complain that Talevski, in executing a release to provide access to her tax records, completed a Form 8821 instead of the proper Form 4506. There appears to be no disagreement on the right of the defendants to access the information, only a question of whether the proper form has been executed. The court expects the parties are capable of resolving this issue without further court involvement. Finally, the defendants take issue with Talevski's reference to "possibly other documents" in response to some requests for production. There is no indication that Talevski has withheld any document or that this statement is anything more than an acknowledgment of her duty to update responses as needed.

On May 22, 2006, Talevski indicated in her response to interrogatories propounded by the county defendants that she had just learned that her name, as it appears on her birth certificate, is spelled "Televska," which she explains in her parents' native Macedonian, is the feminine counterpart to the masculine "Talevski." The defendants, however, analogize this circumstance to that in ***Dotson v. Bravo***, 321 F.3d 663 (7th Cir. 2003), in which a twice convicted felon named DeMarco Shaunte Sheppard, filed a civil action under the alias Shaunte Dotson. The defendants claim that Talevski's failure to proceed under her true name is "fatal to her cause of action." The defendants' analogy is misplaced.

In ***Dotson***, the court noted that this plaintiff's abuse of the judicial process included:

> 1) filing a federal civil rights claim under
> a false name; 2) serving unverified answers
> to interrogatories propounded by the City
> containing lies about his true identity, date
> of birth, and complete arrest record; 3)
> serving verified responses to the same inter-
> rogatories (following the issuance of a court
> order compelling such disclosure) that still
> did not disclose his correct birth date or
> arrest record; 4) lying under oath about his
> true name and birth date in a deposition in
> Tamika Smith's federal civil rights case; 5)
> lying about his true name to police when
> arrested on January 1, 1998, to avoid out-
> standing arrest warrants; and 6) continuing
> to conceal his true identity from state offi-
> cials throughout the multi-year duration of
> his three state criminal trials and incarcer-
> ation.

*Dotson*, 321 F.3d at 668

In this instance, the plaintiff, who has always been known as Susie G. Talevski, properly disclosed an easily explained, culturally routine, change of spelling, indicating not a hint of bad faith. The defendants' insistence on raising it is without merit.

On May 14, 2007, the plaintiff filed a motion seeking the return of the digital recording device that was in the defendants' possession until it was briefly under the control of the federal grand jury for the Northern District of Indiana. The defendants, on May 22, 2007, filed notice that the device was mailed to Talevski. Accordingly, that portion of her motion seeking the return of this device is moot.

However, Talevski, in this motion, and the state defendants in their motion to compel, seek sanctions. Talevski does not indicate the basis under which she seeks the imposition of

16

sanctions on the state's attorney. However, the circumstances provide for only limited possibilities. It is clear that sanctions under Federal Rule of Civil Procedure 11 are not implicated by these circumstances. This rule regards an attorney's certification that filings with the court are not frivolous and are "not being presented for any improper purpose," and specifically exempts application of the rule to conduct arising under the discovery provisions of Rules 26 through 37. Rule 11(d).

Sanctions under Rule 37 include the failure to comply with an order as well as providing false or misleading disclosures. However, it is only under Rule 37(b) that sanctions reach an attorney's conduct. *Maynard v. Nygren*, 332 F.3d 462, 470 (7th Cir. 2003). Further, sanctions under Rule 37 are gauged by the costs incurred because of the violation. *Maynard*, 332 F.3d at 471 ("However, Rule 37 supports only the reimbursement of fees resulting from the discovery violation."). Under the court's inherent power, sanctions are limited to instances in which the court has found willful disobedience or bad faith. *See Maynard*, 332 F.3d at 470 *(citing Roadway Express, Inc. v. Piper* 447 U.S. 752, 755-56, 100 S.Ct. 2455, 2458-59, 65 L.Ed.2d 488 (1980). Similarly, in the context of contempt proceedings based upon allegations of fraud on the court, conduct that is analogous to the conduct Talevski alleged here, courts require proof under a clear and convincing standard. *See Maynard*, 332 F.3d at 468.

Talevski argues that counsel for the state defendants acted in bad faith, encouraged a frivolous investigation, and did so

17

with the purpose of evading the this court's order directing the return of the digital recording device. Talevski drew this conclusion based upon inferences created from the circumstances and timing of these events. Specifically, Talevski noted that the state defendants, in their initial motion to reconsider the order directing the return of the device, suggested the possibility of a violation of federal wiretapping laws. Talevski further notes the fact that the federal authorities' interest in the device was aroused just one day after the court ordered its return, but apparently not at any time during the previous eight months. From these details, Talevski asks the court to conclude first that the state's attorney informed the federal authorities about the device and, secondly, did so in bad faith.

Talevski has provided little actual evidence from which the court could make factual findings that support her allegations. The timing of events is suspect, and the notion that Talevski's conduct might have violated federal wiretapping laws is a flimsy proposition.  However, Talevski's assumption that only one conclusion can be drawn is made without reference to factual support and cannot be the basis for a finding regarding the state attorney's state of mind. Further, in light of the fact that the device has been returned, and there is no assertion of costs or prejudice beyond delay, Rule 37 sanctions are not warranted.

Similarly, the state's bid for sanctions against Talevski is not warranted. As described in detail above, the states's motion was granted only in part. Pursuant to Rule 37(a)(4)(C), the court

declines to award sanctions. To the extent further responses from Talevski are required, she is ordered to respond, consistent with this order, within 30 days of the date of this order.

————————————

For the foregoing reasons, Defendant Carter's and Defendant Kortenhoven's Motion to Compel Discovery and for Sanctions and Other Relief filed by the defendants, Bernard Carter and Marilyn Kortenhoven, on March 26, 2007, is **GRANTED IN PART** and **DENIED IN PART**. The Motion for State Defendant's Counsel to Again be Ordered to Return the Digital Recorder and for Sanctions filed by the plaintiff, Susie G. Talevski, on May 14, 2007, is **DENIED AS MOOT**.

ENTERED this 18th day of June, 2007

s/ ANDREW P. RODOVICH
United States Magistrate Judge

19